IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAMES SHEGSTAD,

                Plaintiff,                OPINION AND ORDER

v.

                                      19-cv-170-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff James Shegstad seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Shegstad contends that remand is warranted because the administrative law judge ("ALJ") failed to consider the effects of Shegstad's mental impairments on his ability to work. Because the ALJ's finding that Shegstad's anxiety and depression caused no more than mild limitations in any of the functional areas was supported by substantial evidence, the court will affirm the denial of benefits.

BACKGROUND[1]

A. **Overview of Claim**

Plaintiff James Shegstad applied for social security disability benefits on November 6, 2014, claiming an alleged onset date of October 15, 2012. With a birth date of July 16, 1964, Shegstad was at the very top range of "a younger person" at his alleged onset date, and he moved into "closely approaching advanced age" during the course of the

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #5. Because of the narrow scope of Shegstad's appeal, the court only reviews facts relevant to his mental impairments.

administrative process. (AR 84.) Shegstad served in the United States Air Force for 26 years, retiring in 2011. After his retirement, he worked as a human resources assistant or clerk with the United States Customs and Border Control for approximately ten months, with his employment ending shortly before his alleged disability onset date. (AR 31.) He claimed disability based on sleep apnea, tendinitis in his hands, herniated discs in lumbar, hypertension, depression, testicular cancer in remission, hypothyroidism and plantar fasciitis. (AR 84-85.)

### B. ALJ's Decision

ALJ Corey Ayling held a video hearing on November 27, 2017, at which Shegstad appeared personally and by counsel. As of the alleged onset date, the ALJ found that Shegstad suffered from a variety of physical impairments, including degenerative joint disease and degenerative changes of the lumbar spine with low back pain, among others. (AR 18.) However, the ALJ determined that Shegstad's "medically determinable mental impairments of depressive disorder and anxiety (Exhibit 6F, p. 89), considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and therefore [are] nonsevere." (AR 20.) In so finding, the ALJ relied on: (1) neuropsychological testing in August 2017, finding a "normal cognitive profile"; (2) a note by his psychologist Elizabeth Possis, Ph.D., L.P., that Shegstad's "mental status" was "fully intact" and her rating of his GAF as 64-68, "which is consistent with only 'mild' symptoms or difficulties in functioning"; and (3) the psychological evaluation completed in September 2015 by Travis Hinze, Ph.D., in which Dr. Hinze determined that Shegstad would have no major problems in understanding,

2

remembering and carrying out simple instructions and in maintaining concentration, attention and work pace, and only "mild to moderate" impairments in responding appropriately to supervisors and coworkers and in withstanding routine work stressors. (AR 19-21.)

The ALJ also conducted his own assessment of the four functional areas, *see* 20 C.F.R. § 404.1520a(c)(4), finding that Shegstad had no more than mild limitations for each. (AR 21-22.) In this latter analysis, Shegstad again relied on Dr. Hinze's report, as well as on the opinions of the state agency mental health consultants, who similarly found that Shegstad's mental health impairments were non-severe. (*Id.*)

In formulating a residual functional capacity ("RFC"), the ALJ limited Shegstad to light work and included a number of additional, exertional limitations, but the ALJ did not include any nonexertional limitations, in light of his finding that Shegstad had no more than mild limitations in the four functional areas. Relying on the testimony of the vocational expert, the ALJ then found that Shegstad could perform his past relevant as a human resources clerk and, therefore, was not disabled.

### C. Mental Health Medical Record

Plaintiff sought mental health treatment through the Minneapolis VA. Shegstad saw Dr. Possis on October 16, 2012, for a behavioral health provider evaluation and treatment recommendations regarding anxiety. (AR 545-59.) He complained of stress and anxiety, stated that he previously engaged in psychotherapy, and reported that he was taking venlafaxine, which he reported was working. (AR 546.) At that time, Possis's assessment of various mental status indicators were "normal," "calm," and "good." (AR

547.) Possis's diagnostic impression was "Anxiety NOS" and "Major Depressive Disorder, Recurrent, in full remission." (AR 549.) As noted by the ALJ, Dr. Possi also determined that Shegstad's current global assessment of functioning ("GAF") score was 64.[2] Shegstad was further interested in therapy, which Possis agreed to provide, indicating that she expected improvement in three to eight sessions. (AR 549.) Shegstad proceeded to participate in therapy on a roughly weekly basis from November 1, 2012 to December 12, 2012. (AR 533-545.)[3] Shegstad also attended therapy with other psychologists for various periods of time over the next several years. (*See, e.g.*, AR 726, 1063, 1089, 1132.)

Material to plaintiff's appeal, Dr. Hinze also conducted a mental status evaluation on September 15, 2015. (AR 624.) Shegstad was referred to Dr. Hinze by the Social Security Determination Bureau. After reviewing his medical record and interviewing Shegstad, Hinze concluded that he suffers from "major depressive disorder, recurrent, mild-to-moderate" and "generalized anxiety disorder, by history." (AR 627.) Hinze then assessed Shegstad's functional areas, finding:

---

[2] "The Global Assessment of Functioning (GAF) is a numeric scale used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of an individual, e.g., how well one is meeting various problems-in-living. Scores range from 100 (extremely high functioning) to 1 (severely impaired)." Wikipedia, "Global Assessment of Functioning," https://en.wikipedia.org/wiki/Global_Assessment_of_Functioning. The range 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.*

[3] Plaintiff provides a "medical summary" as an attachment to his brief. The page numbers of the summary, however, do not align with the administrative record and, therefore, this document is of limited value to the court. While that summary purports to show additional periods of individual therapy over three years, the court was unable to locate supporting records, if they even exist. For example, plaintiff represents that he attended psychotherapy treatment sessions from 05/05/13 to 07/08/13. (Pl.'s Br., App. 1 (dkt. #7-1) 5.) The cite page numbers do not contain records of therapy. As far as the court can discern from the administrative record, plaintiff attended vocational counseling. (*See, e.g.*, AR 511.)

- Capacity to understand, remember and carry out simple instructions: I doubt he would have any major problems in this areas.

- Capacity to respond appropriately to supervisors and coworkers: He may have mild-to-moderate impairment in this area.

- Capacity to maintain concentration, attention, and work pace: I doubt he would have any significant problems in this area.

- Capacity to withstand routine work stressors: He may have mild-to-moderate impairment in this area.

- Capacity to adapt to changes: I doubt he would have any major problems in this area.

(AR 627.)

Finally, on September 28, 2015, Stephen Kleinman, M.D., a state agency medical consultant, conducted a record review. including reviewing Dr. Hinze's report, concluding that

> On recon[sideration] there is now [a consultative examination] in file sufficient to assess severity. Claimant has limited [prescription history] and objectively did not appear severely depressed at [consultative examination]. While he does have mood and anxiety [symptoms,] there are no severe functional limitations established.

(AR 99.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the

5

Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

Here, Shegstad's only challenge on appeal, proffered in cursory fashion,[4] is that the ALJ erred in failing to account for mental health limitations in determining his ability to work. Specifically, plaintiff contends that the ALJ erred when he placed great weight on Dr. Hinze's opinions but failed to incorporate Hinze's findings that Shegstad would have "mild to moderate" impairments in his capacity to (1) respond appropriately to supervisors and co-workers and (2) withstand routine work stressors. (Pl.'s Br. (dkt. #7) 4.) Instead, the ALJ found that Shegstad would have no more than mild limitations in any of the functional areas. (AR 23.)

The court rejects this criticism for two, core reasons. *First*, the ALJ reasonably construed Dr. Hinze's statement that Shegstad "may have mild-to-moderate" impairments in two of the functional areas as having mild limitations, *not* reaching the moderate level. Indeed, Dr. Kleinman, the state agency medical consultant, interpreted Dr. Hinze's

---

[4] Plaintiff's brief spans five pages, with about a page devoted to this argument. Plaintiff filed no reply brief.

findings similarly, concluding that Shegstad's mental impairments did not constitute a severe impairment. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe . . . ."). *Second*, the ALJ did not rely solely on Dr. Hinze's opinion in finding no more than mild limitations in the four functional areas. As described above, the ALJ also relied on the findings of Shegstad's treating psychologist, Dr. Possis, including her GAF rating, which corresponds to only mild symptoms. Finding that the ALJ's determination that Shegstad's anxiety and depression were non-severe impairments and his rating of functional areas were supported by substantial evidence, the court will affirm the Commissioner's decision.[5]

ORDER

IT IS ORDERED that:

1) The decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff James Shegstad's application for disability benefits is AFFIRMED.

2) The clerk of court is directed to enter judgment for defendant.

Entered this 2nd day of January, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[5] Plaintiff fails to develop any argument or cite to any caselaw requiring an ALJ to consider mild limitations in the four functional areas in formulating an RFC, so the court does not address this contention further.